IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

GERALD GLASER,

                Plaintiff,

    v.                                                    OPINION and ORDER

SUPERIOR SILICA SANDS, LLC,                        22-cv-99-jdp

                Defendant and Third-Party
                Plaintiff,

    v.

IRON MOUNTAIN TRAP ROCK CO., and
FRED WEBER, INC.,

                Third-Party Defendants.

---

Plaintiff Gerald Glaser filed this case against defendant Superior Silica Sands, LLC, in the Circuit Court for Chippewa County. Glaser leases land to Superior for frac sand mining, and he alleges that Superior failed to properly reclaim the land when the mining was done.

The current question is whether the case belongs in this court. Superior contends that Glaser's suit is "inextricably intertwined" with an adversary proceeding pending in the United States Bankruptcy Court for the District of Delaware. So Superior removed the suit to this court, and then promptly moved to transfer it to the Delaware bankruptcy court. Dkt. 8.

For reasons explained below, the court will deny the motion to transfer because Superior has not shown that Glaser's suit is removeable under federal bankruptcy jurisdiction, the only basis for jurisdiction cited in the removal petition. The court will give the parties an opportunity to show that the court could exercise jurisdiction on the basis of diversity of citizenship. If they fail to do so, then this case will be remanded to the state circuit court.

BACKGROUND

The background facts are drawn from the Declaration of Scott Waughtal, President and CEO of Superior, Dkt. 9, and from the record. They are not in dispute.

A.  **The bankruptcy proceeding**

Superior owns a frac sand mining operation located in Chippewa County, Wisconsin, known as the Auburn Mine. The mine is located on land that Superior leases from several landowners, including Glaser and members of his family. In 2011, Superior contracted the operations of the Auburn Mine to third-party defendant Weber, Inc., and then to its subsidiary and assignee, third-party defendant Iron Mountain Trap Rock Company. Superior alleges that, under the terms of the parties' Services Agreement, Weber agreed to operate the mine and to indemnify Superior for any claims, losses, or damages arising out of Weber's operations of the mine.

In 2019, Superior, along with four affiliates, filed a Chapter 11 petition in the United States Bankruptcy Court for the District of Delaware. The cases of all five debtors were jointly administered as *In re Emerge Energy Services LP,* Case No. 19-11563-KBO. Glaser was listed as a creditor residing at the same address alleged in the instant complaint. In connection with the confirmation process, the debtors filed a schedule of leases to be assumed under the plan, one of which was the lease between Superior and Carol Glaser, G. Glaser, and three other members of the Glaser family, with no cure amount listed for the assumption. Glaser did not contest Superior's assertion that there was no cure amount due under the lease, nor did he file a proof of claim against Superior's bankruptcy 11 estate.

The bankruptcy court confirmed the Second Amended Joint Plan of Reorganization. *Id*., Exh. A. Superior's bankruptcy case was closed on June 4, 2020.

On December 23, 2020, Superior filed a complaint against Weber in the Delaware bankruptcy court, initiating Adversary Proceeding No. 20-51052-KBO. It asserted six claims for relief: (i) a declaratory relief claim asking the court to find that Weber's reclamation obligations at the Auburn Mine had survived rejection of the services agreement in the title 11 case; (ii) a second declaratory relief claim asking the court to find that Weber was an "operator" of the Auburn Mine under Wisconsin law; (iii) a breach of contract claim for Weber's failures to fulfill its reclamation obligations under the services agreement; (iv) an equitable indemnity claim under Wisconsin law; (v) a contribution claim under Wisconsin law; and (vi) an objection to a proof of claim that Weber had filed against Superior in the bankruptcy case. *Id*., Exh. D. Superior asserted that the bankruptcy court had jurisdiction over the dispute because it retained post-confirmation jurisdiction to interpret its own orders entered in connection with plan confirmation and because all of Superior's claims were counterclaims to Weber's proof of claim. *Id*., Exh. D, at ¶¶ 41-43.

The bankruptcy court granted Weber's motion to dismiss the equitable indemnity claim, but otherwise denied the motion. *Id*., Exh. E. In its order, the court stated that it had subject matter jurisdiction pursuant to 28 U.S.C. §§ 157(a) and 1334(b). *Id*. at 1.

### B. Allegations of Glaser's complaint

Glaser's complaint, filed in the Circuit Court for Chippewa County, alleges the following.

Glaser leased four parcels of his land to Superior for mineral mining. Under the contract, Superior was required to ensure that the property was reclaimed to its original state after mining was complete, including the replacement of eight to ten inches of topsoil. Mining is

now complete, but Superior has not complied with its obligation to replace the topsoil, leaving the land worthless for farming. Upon information and belief, Superior buried the topsoil.

Glaser has a second lease with Superior for the use of 90 acres of Glaser's land, for which Superior pays $24,000 a year. Superior failed to make its annual rent payments for 2019, 2020, and 2021. Superior has also failed to pay property taxes on the property.

The complaint alleges that Superior's failure to reclaim the land to its original state and restore the topsoil constitutes negligence and a breach of the parties' mining contract. Glaser also asserts a breach of contract claim based on Superior's failure to make its rent and property tax payments under the land lease. Glaser's complaint does not mention Weber or Iron Mountain or imply that any party but Superior is liable for the failed reclamation, rent payments, or property taxes.

## C. Superior's notice of removal, answer and third-party complaint

Superior timely removed Glaser's case to this court. Dkt. 1. Superior asserted that this court has jurisdiction over Glaser's action under 28 U.S.C. §§ 1334 and 1452 because Glaser's claims are "inextricably intertwined" with Superior's pending adversary proceeding in the Delaware bankruptcy court against Weber. *Id*., at ¶ 4. It further asserted that Glaser's claims against Superior may have been addressed in the *Emerge* bankruptcy proceeding and may be barred by Superior's confirmed bankruptcy plan. *Id*. at ¶ 8.

Superior answered the complaint and filed a third-party suit against Weber and Iron Mountain seeking indemnification and largely duplicating the claims asserted against those parties in the adversary bankruptcy proceeding.[1] Superior moved to transfer this case to the Delaware Bankruptcy Court.

---

[1] Superior improperly titled the Third-Party Complaint as a "cross-complaint." Compare Fed.

ANALYSIS

Superior's motion to transfer is the matter before the court, but the court's first task is to determine whether it has jurisdiction. *McCready v. White*, 417 F.3d 700, 702 (7th Cir. 2005) ("Ensuring the existence of subject matter jurisdiction is the court's first duty in every lawsuit."). *See also* Wright & Miller, 15 Fed. Prac. & Proc. Juris. § 3845 (4th ed.) ("Of course, for transfer under [28 U.S.C.] Section 1404(a), both the transferor and the transferee must have subject matter jurisdiction over the case."). As the party seeking removal, Superior bears the burden of establishing jurisdiction in the federal courts. *Doe v. Allied Signal, Inc.*, 985 F.2d 908, 911 (7th Cir. 1993). The court construes the removal statute narrowly, resolving any doubts in favor of remand. *Id.*

Superior removed this case under 28 U.S.C. § 1452. Dkt. 1, at 3. Section 1452(a) provides that "[a] party may remove any claim or cause of action in a civil action" in a state court "to the district court for the district where such civil action is pending," if 28 U.S.C. § 1334 provides the district court with jurisdiction over the claim or cause of action. Section 1334(a) gives the federal district courts "original and exclusive jurisdiction" over all cases under title 11, the Bankruptcy Code. Glaser's action is not a bankruptcy case, so this provision does not apply.

Section 1334(b)'s grant of jurisdiction is broader, giving district courts "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." For a claim to "arise under" title 11, it must depend on "a right created

_____

R. Civ. P. 13(g) (explaining that a crossclaim is "any claim by one party against a co-party"), with Fed. R. Civ. P. 14 (explaining that a third-party complaint is one brought by a defending party against a nonparty).

or determined by a statutory provision of title 11." *In re Repository Techs., Inc.*, 601 F.3d 710, 719 (7th Cir. 2010) (citation omitted). Glaser's claims don't "arise under" title 11 because they don't invoke any rights or remedies under the Bankruptcy Code; they are state law claims.

"Arising-in" jurisdiction covers proceedings that "arise *only* in bankruptcy cases," that "would have no existence outside of the bankruptcy" or "have no practical existence but for the bankruptcy." *Ortiz v. Aurora Health Care, Inc. (In re Ortiz)*, 665 F.3d 906, 911-12 (7th Cir. 2011) (internal citations and quotations omitted)(emphasis in original). This provision does not apply to Glaser, either. Superior develops no argument suggesting that Glaser's claims for breach of contract and negligent reclamation would not exist but for Superior's bankruptcy.

So, federal jurisdiction depends on whether Glaser's claims are "related to" a case under title 11. The Seventh Circuit reads this language narrowly, holding that a case is "related to" a bankruptcy "when the dispute affects the amount of property for distribution [i.e., the debtor's estate] or the allocation of property among creditors." *In re FedPack Sys., Inc.*, 80 F.3d 207, 213-14 (7th Cir. 1996). "The reference to cases related to bankruptcy is primarily intended to encompass tort, contract, and other legal claims by and against the debtor, claims that, were it not for bankruptcy, would be ordinary stand-alone lawsuits between the debtor and others but that section 1334(b) allows to be forced into bankruptcy court so that all claims by and against the debtor can be determined in the same forum." *Zerand–Bernal Group, Inc. v. Cox*, 23 F.3d 159, 161 (7th Cir. 1994). A second aim of the provision is to "force into the bankruptcy court suits to which the debtor need not be a party but which may affect the amount of property in the bankrupt estate." *Id*.

Nowhere in its removal petition or motion to transfer venue has Superior suggested, much less demonstrated, that Glaser's claims would affect the amount of property available for

6

distribution or the allocation of property among Superior's creditors. In fact, it would be difficult if not impossible for it to make that showing because the bankruptcy court confirmed Superior's reorganization plan on December 18, 2019, three years before Glaser filed his lawsuit. At that point, all property and assets of the debtors' estates vested in the reorganized debtors and the bankruptcy court's jurisdiction over the property lapsed. *FedPack*, 80 F.3d at 215; 11 U.S.C. § 1141(b) ("[T]he confirmation of a plan vests all of the property of the estate in the debtor."). *See also Pettibone Corp. v. Easley*, 935 F.2d 120, 122 (7th Cir. 1991) (once bankruptcy court confirms reorganization plan, debtor "may go about its business without further supervision or approval" but is also "without the *protection* of the bankruptcy court") (emphasis in original); *In re Resorts Int'l, Inc.*, 372 F.3d 154, 165 (3d Cir. 2004) ("At the most literal level, it is impossible for the bankrupt debtor's estate to be affected by a post-confirmation dispute because the debtor's estate ceases to exist once confirmation has occurred.").

Even though the bankruptcy court's jurisdiction is, as a practical matter, "sharply reduced" after it confirms the plan, it still retains jurisdiction to "protect the confirmation order, prevent interference with the execution of the plan, and otherwise aid in the plan's operation." *In re Kmart Corp.*, 359 B.R. 189, 195 (Bankr. N.D. Ill. 2005); *see also Globaleyes Telecommunications, Inc. v. Verizon N., Inc.*, 425 B.R. 481, 497-98 (S.D. Ill. 2010) (collecting cases and noting that "courts in the Seventh Circuit have consistently held that post-confirmation jurisdiction can be exercised by a bankruptcy court only to the extent necessary to interpret or implement the plan"). But the exercise of such jurisdiction is appropriate only to ensure that reorganization plans are implemented and to protect estate assets devoted to implement the confirmed plan. *Id*. at 196 (citation and quotations omitted). Again, nothing in

Superior's submissions suggests that Glaser's suit threatens the implementation or execution of the reorganization plan or any estate assets.

Glaser points all of this out in opposing the transfer motion, but Superior largely ignores his arguments and the case law. Superior seems to assume that Glaser's case is "related to" a bankruptcy proceeding because (a) the issues raised in Superior's third-party contribution claim are nearly identical to those asserted in its adversary proceeding pending against Weber in the Delaware bankruptcy court, and (b) the bankruptcy court found that it had jurisdiction over Superior's suit against Weber. But Superior's conclusion doesn't follow from its premises. Superior's adversary action against Weber is related to the underlying *Emerge* bankruptcy proceeding because it presents issues concerning the administration and execution of the bankruptcy plan and questions of bankruptcy law, specifically: (1) whether Weber's reclamation obligations under its services agreement with Superior survive notwithstanding Superior's rejection of the agreement under section 365 of the Bankruptcy Code, and (2) whether Weber's alleged prepetition breaches of the services agreement estop or otherwise bar it from recovering damages arising from the rejection, damages that Weber asserted in a proof of claim in the bankruptcy proceeding. Dkt. 9-4. But the relatedness of Superior's action against Weber to the bankruptcy plan does not show that *Glaser's action against Superior* is related. As Glaser points out, there is no evidence that Glaser is a party to the services agreement at issue in the adversary bankruptcy proceeding, that Weber is a party to the leases underlying Glaser's claims in his complaint, or that Glaser's agreements with Superior are at issue in the adversary proceeding. And despite Superior's insistence that Weber is responsible for reclaiming Glaser's land, Glaser has not sued Weber. Resolving Glaser's claims will depend

on Superior's obligations to Glaser; whether some third party with whom Superior sub-contracted is ultimately at fault is not Glaser's concern.

Superior takes pains to note the overlapping facts and legal questions at issue in its two actions against Weber. But the "overlap" exists only because Superior chose to file a third-party complaint against Weber while its adversary action was still pending in the bankruptcy court, not because of anything alleged in Glaser's complaint. The risk of conflicting rulings from the bankruptcy court and this court on the indemnification issue might be a reason to stay the third-party complaint, but it does not show that Glaser's claims involve the enforcement or interpretation of the bankruptcy *plan*. Absent that connection, this court lacks jurisdiction. *See Home Ins. Co. v. Cooper & Cooper, Ltd.*, 889 F.2d 746, 749 (7th Cir. 1989) ("Although the request for declaratory relief concerning the employees of Cooper & Cooper and the plaintiffs in state court has a nexus with the bankruptcy—in the sense that it would be convenient, and promote consistency, to resolve all questions concerning the policy at one go—it does not necessarily have a financial effect on the estate (or the apportionment among its creditors)").

Apart from its misplaced focus on its dispute with Weber, Superior offers only the vague assertion that "Glaser's claims against Superior may have been addressed in Superior's chapter 11 case and may be barred by Superior's plan of reorganization." Dkt. 1, at 3. Superior avers that, in spite of having notice that Superior had filed for bankruptcy and identified Glaser as a creditor, Glaser did not file a proof of claim in the bankruptcy proceeding or dispute Superior's assertion that it was not in default on the leases. And it notes that the Delaware bankruptcy court specifically retained jurisdiction in the *Emerge* case over post-confirmation claims that could have been filed during the bankruptcy proceeding. Dkt. 8, at 3; *see also* Dkt. 9-1, p. 48, ¶ 45. Although it doesn't develop a specific argument tying these points together, Superior

seems to imply that Glaser waived or discharged his claims in the bankruptcy proceeding and that only the bankruptcy court can decide this.

Superior's vague allusions to claim preclusion are insufficient to establish that Glaser's case is related to Superior's bankruptcy proceeding, for three reasons. First, regardless of the terms of the reorganization plan, the jurisdictional requirements of § 1334(b) must still be met. *Zerand-Bernal*, 23 F.3d at 164 ("A court cannot write its own jurisdictional ticket."); *In re Resorts*, 372 F.3d at 161 ("If there is no jurisdiction under 28 U.S.C. § 1334 or 28 U.S.C. § 157, retention of jurisdiction provisions in a plan of reorganization or trust agreement are fundamentally irrelevant."). Second, Superior doesn't explain how deciding the question whether Glaser's claims are precluded by the terms of the bankruptcy plan implicates the implementation or execution of the plan. Glaser is not seeking to file a late claim for assets in the bankruptcy estate; he asserts that his claims concern Superior's ongoing reclamation and rent obligations *after* the plan was confirmed and Superior assumed its leases with Glaser. Third, even if Superior has grounds to assert the discharge in bankruptcy as a defense to Glaser's claims, it does not argue that it could not present this defense in state court. In fact, state courts routinely consider estoppel defenses based on prior bankruptcy orders. *See, e.g., State v. Burse*, No. 2015AP1141, 2016 WL 8578219, at *1 (Wis. Ct. App. Jan. 29, 2016) (considering argument that State's action seeking money judgment for fraud was precluded by earlier judgment of federal bankruptcy court); *Omegbu v. Nicholson*, 2005 WI App 111, ¶ 1, 283 Wis. 2d 508, 698 N.W.2d 132 (affirming trial court's conclusion that plaintiff's action against defendants was judicially estopped as a result of his failure to disclose his claims during his bankruptcy proceedings).

In the end, all Superior has shown is that: (1) the bankruptcy court retained broad post-confirmation jurisdiction in the *Emerge* proceeding; and (2) the bankruptcy court found that Superior's adversary action against Weber falls within the scope of that jurisdiction. Contrary to its assumption, neither of these facts *automatically* establishes that Glaser's state law claims for alleged post-confirmation breach of contract and negligence are "related to" the bankruptcy case. More is needed, and Superior has not provided it. So this court cannot find that it has federal bankruptcy jurisdiction over Glaser's claims.

This means that this case must be remanded to state court unless there is another ground for federal jurisdiction. Glaser says there is diversity jurisdiction under 28 U.S.C. § 1332. He notes that he and Superior are residents of different states and the amount in controversy exceeds $75,000. But Superior is a limited liability company. For purposes of diversity, the citizenship of a limited liability company is the citizenship of all of its members. *Commonwealth Ins. Co. v. Titan Tire Corp.*, 398 F.3d 879, 881 n1 (7th Cir 2004). There are no allegations in the complaint or the notice of removal regarding the members of Superior or their citizenship a of the time of removal. So jurisdiction isn't clear from the pleadings.[2]

The court will give Superior until February 10, 2023, to allege facts sufficient to establish diversity jurisdiction under 28 U.S.C. § 1332. The parties may file a stipulation on jurisdiction, so long as the stipulation lays out all the relevant facts about the citizenship of the parties, including the citizenship of Superior's members. See *Prizevoits v. Indiana Bell Telephone Co.*, 76 F.3d 132, 134 (7th Cir. 1996). If Superior does not respond by February 10, the court will remand this case to the Circuit Court for Chippewa County.

---

[2] No one suggests that Glaser's complaint for negligence and breach of contract presents a federal question under 28 U.S.C. § 1331.

ORDER

IT IS ORDERED that:

1.  The motion of defendant Superior Silica Sands, LLC for transfer, Dkt. 8, is DENIED.

2.  Not later than February 10, 2023, Superior must allege facts establishing diversity of citizenship, including the citizenship of Superior's members. If it fails to do so, then this case will be remanded to the Circuit Court for Chippewa County.

Entered February 2, 2023.

BY THE COURT:

/s/

_____

JAMES D. PETERSON
District Judge